Martin W. Aron (N.J. Bar I.D. 036011984)
Luke P. Breslin (N.J. Bar I.D. 029222010)
Michael J. Nesse, Esq. (N.J. Bar I.D. 116072014)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(908) 795-5200
Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ASHLEY CHARLES, | : | |
| | : | Civil Action No. |
| Plaintiff, | : | |
| | : | |
| v. | : | **NOTICE AND PETITION FOR** |
| | : | **REMOVAL OF CASE FROM THE** |
| SPRING HILLS SENIOR COMMUNITIES, | : | **SUPERIOR COURT OF NEW JERSEY,** |
| LLC, UNANDA BELL, JOHN DOES 1-10, | : | **LAW DIVISION, MIDDLESEX COUNTY** |
| AND XYZ CORP. 6-10, | : | |
| | : | |
| Defendants. | : | |

TO: William T. Walsh, Clerk                    Ty Hyderally, Esq.
     United States District Court            Francine Foner, Esq.
     District of New Jersey                    Hyderally & Associates, P.C.
     MLK Jr. Federal Bldg. & Courthouse    33 Plymouth Street, Suite 202
     50 Walnut Street                          Montclair, NJ  07042
     Newark, NJ  07102

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Spring Hills, LLC

("Spring Hills"), improperly pled as Spring Hills Senior Communities, LLC, and Unanda Bell

("Ms. Bell") (collectively referred to as "Defendants") respectfully submit this Notice and Petition

for Removal of this case from the Superior Court of New Jersey, Law Division, Middlesex County,

bearing Docket No. MID-L-002711-21, and states as follows as grounds for removal:

1. On or about May 6, 2021, Plaintiff, Ashley Charles ("Plaintiff"), filed a civil action

captioned <u>Ashley Charles v. Spring Hills Senior Communities, LLC, et al.</u>, Docket No. MID-L-

2711-21, in the Superior Court of New Jersey, Law Division, Middlesex County.  A true and correct copy of the Complaint in that action is attached hereto as Exhibit A.

2.      On or about May 7, 2021, counsel for Defendants agreed to accept service of the Summons and Complaint on behalf of Defendants. A true and correct copy of the Acknowledgment of Service, dated May 12, 2021, is attached hereto as Exhibit B.

3.      The Complaint was the initial pleading received by Defendants setting forth the claims upon which Plaintiff's action is based. These documents constitute all pleadings and process provided to Defendants in this action.

4.      Defendants have not filed an answer or other pleading in the Superior Court of New Jersey.

5.      This notice and petition is timely filed within the provisions of 28 U.S.C. § 1446, as Defendants have effected removal within thirty (30) days of receipt of the Complaint, the first paper from which Defendants ascertained that the case is one which has become removable.  See 28 U.S.C. § 1446.

6.      This action is removable to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331.

7.      As set forth in the Complaint, Plaintiff alleges, *inter alia*, that Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2651(b), *et seq*. and 29 U.S.C. § 2601, *et seq*.

8.      Accordingly, this action is being removed to this Court on the ground that original jurisdiction over Plaintiff's claims exists pursuant to 28 U.S.C. § 1331, by virtue of its federal question jurisdiction arising out of Plaintiff's claims under the FMLA.

9.      Pursuant to 28 U.S.C. § 1441, this action is properly removable to federal court because it is founded, in part, on claims or rights arising under the laws of the United States.

10.     This Court has supplemental jurisdiction over Plaintiff's additional causes of action under 28 U.S.C. §§ 1367 and 1441(c).

11.     Venue is proper in this Court.

12.     Defendants file this Notice of Removal without waiving any defense to Plaintiff's claims or conceding that Plaintiff has pled claims upon which relief can be granted.

13.     Pursuant to 28 U.S.C. § 1446(d), Defendants have given written notice of the removal of this action to all adverse parties and has filed a copy of this notice with the Clerk of the Superior Court of New Jersey, Law Division, Middlesex County.

   **WHEREFORE**, Defendants respectfully request that the within action, now pending in the Superior Court of New Jersey, Law Division, Middlesex County, be removed to the United States District Court for the District of New Jersey.

Respectfully submitted,

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
(908) 795-5200
Attorneys for Defendants

By:     /s/     *Martin W. Aron*
                Martin W. Aron
                Luke P. Breslin

Dated:  May 21, 2021

4837-5955-1209, v. 2

# EXHIBIT A

Ty Hyderally, Esq. (ID# 023231993)
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
Attorneys for Plaintiff: Ashley Charles

| | |
|---|---|
| **ASHLEY CHARLES,**<br><br>**PLAINTIFF,**<br><br>**VS.**<br><br>**SPRING HILLS SENIOR COMMUNITIES, LLC, UNANDA BELL, JOHN DOES 1-10, AND XYZ CORP. 1-10,**<br><br>**DEFENDANTS.** | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: MIDDLESEX COUNTY DOCKET NO.:<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Ashley Charles ("Charles" or "Plaintiff"), who resided at 911 Plaza Drive, Woodbridge, New Jersey 07095 during the relevant time period, by way of this Complaint against Defendants, Spring Hills Senior Communities, LLC ("Spring Hills"), Unanda Bell ("Bell"), John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively "Defendants"), hereby says:

## I.   Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD") (disability discrimination); (2) a violation of the LAD (failure to engage in interactive process); (3) a violation of the LAD (failure to accommodate); (4) a violation of the LAD (retaliation); (5) a violation of the New Jersey Earned Sick Leave Law, N.J.S.A. 34:11D-1 et seq. ("NJESLL") (Interference); (6) a violation of the NJESLL (Retaliation); (7) a violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (Interference); and (8) a violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (Retaliation).

2. This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiff has satisfied all prerequisites to bringing these claims.

3.      Venue is appropriate in this court since Plaintiff worked in Middlesex County, Defendants have an office and do business in Middlesex County, and some of the causes of action accrued in Middlesex County.

## II. Parties

4.      Charles worked for Spring Hills as a receptionist from on or about June 2018, until her unlawful termination on August 3, 2020.

5.      Spring Hills is a for-profit New Jersey limited liability company with corporate offices located at 515 Plainfield Avenue, Suite 200, Edison, New Jersey 08817.

6.      Defendants employed Charles to perform work-related duties in the State of New Jersey.

7.      During the relevant time period, Bell was the Vice President of Human Resources and Talent Management for Spring Hills.

8.      Additionally, Bell was a senior management level employee who controlled Plaintiff's workplace and supervised plaintiff and (1) aided the employer in performing a wrongful act that caused an injury; (2) was generally aware of his/her role as part of an illegal or tortious activity at the time he/she provided assistance; and (3) knowingly and substantially assisted the employer in the principal violation of the statutes referenced herein.

9.      During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management-level employees who controlled Plaintiff's workplace, and supervised Plaintiff and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, Defendants ratified, embraced and added to their conduct.  As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

10.     During the relevant time period, XYZ Corps. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

2

11. At all times referred to in this complaint, employees of the Corporate Defendant(s), who are referred to herein, were acting within the scope of their employment at the workplace during working hours or the Corporate Defendant(s) ratified, embraced and added to their conduct to the extent that their actions went beyond the scope of their employment.

12. Thus, all Defendants are subject to suit under the statutes alleged above.

### III. Factual Allegations

13. In or about June 2018, Charles began working as a receptionist for Spring Hills at its corporate offices located at 515 Plainfield Avenue, Suite 200, Edison, New Jersey 08817, at an hourly rate of $13.00.

14. Charles' receptionist position involved various clerical duties, such as answering phones, responding to emails, receiving and distributing mail, etc.

15. Charles reported to Bell.

16. Throughout her employment, Charles performed her duties in an exemplary manner and received positive performance reviews and salary increases.

17. In fact, after only three months, Bell assigned Charles additional responsibilities of booking executive travel and added billing duties, with a corresponding increase in salary to $15.00 per hour.

18. Further, Bell often praised Charles on her professionalism and work ethic.

19. Charles also received numerous compliments and accolades about her performance from many company employees and executives, such as Alexander Markowitz, Chief Executive Officer and Petra Santos, Vie President of Sales, who gave Charles a $100 gift card in appreciation of her efforts.

20. Subsequently, Charles continued to excel at her position and in June 2019, received a glowing annual performance review with an overall rating of 4.5 out of 5, and a further salary increase to $15.50 per hour.

21. It was not until Charles returned from a medical leave due to her disability that she was accused of having purported performance issues and simultaneously and summarily terminated.

22. On Wednesday, July 1, 2020, Charles awoke to a flare up of her asthma condition, causing her to have difficulty breathing.

23. Charles began working at her normal start time of 9:00 am, but after a few hours her breathing problem had increased to the point that she was unable to continue answering the phone, as she could hardly speak.

24. Thus, at 12:53 pm Charles sent a text message to Bell letting her know that Charles was on her way to the Urgent Care located in Elizabeth, New Jersey to seek emergency treatment for an asthma attack. (Exhibit "1").

25. Despite Charles notifying Bell that Charles was undergoing an asthma attack, Bell continued to call and text Charles throughout the day about work-related matters.

26. The next morning, Thursday, July 2, 2020, Bell approved a sick day for Charles due to her continued illness. (Exhibit "2").

27. Despite this, Bell and Jessica Roman ("Roman"), Supply Manager, continued to call, email and send text messages to Charles asking that she assist Roman with shipping masks and other PPE to Spring Hills' senior communities around the country.

28. Thus, Charles reminded Bell and Roman that she was out sick due to a flare up of her asthma condition, but that Bryan (last name unknown), who had been recently hired specifically to assist with the abundance of PPE shipments, was available to take care of preparing and shipping out the PPE supplies the next day. (Exhibit "3").

29. Charles also sent an email to Roman and Heather Tussing, Vice President of Operations ("Tussing"), stating that she was home recovering from an asthma attack and apologized for any inconvenience caused by her medical condition. (Exhibit "4").

30. Tussing unsympathetically responded "Ashley, I'm sorry you aren't feeling well. We need these packages to go out today as the receipt will be delayed due to the holiday." (Exhibit "4").

31. As she had informed Bell and Roman, Charles similarly informed Tussing that Bryan advised Charles that he would be available to take care of the task the following day, to which Tussing agreed. (Exhibit "4").

32.    Despite this Defendants continued to repeatedly email and text Charles throughout the day to address the PPE shipments, causing her extreme anxiety, which worsened her medical condition.

33.    Despite that Charles was on an approved sick day and barely able to breathe, Bell then asked Charles to punch into work and prepare the shipping labels.

34.    Charles, exhausted as a result of her medical condition and the prescribed medications she was taking for her medical condition, then fell asleep.

35.    Bell directed Charles to come into work while on an approved sick day, despite that there were several other employees who could have easily prepared the PPE shipping labels that day, including Elena Ortiz ("Ortiz), Bell, Roman and others.

36.    In addition, Charles did not have access to Kodiak, which allows employees to print from their home computers directly to the office printers, while the majority of other employees, including Ortiz, Roman and Bell, and many other employees, had access to Kodiak.

37.    Thus, Bell's directive to compel Charles to clock in and prepare and then email shipping labels while she was out sick, was solely to harass Charles because of her medical condition and requested accommodation of a medical leave.

38.    Charles awoke later that evening around 9:00 p.m. to find more emails, text messages, and missed calls from Roman, Bell and Elena Ortiz.

39.    On July 3, 2020, Defendant's offices were closed for the holiday.

40.    Despite that the offices were closed and Defendants were well aware that Charles was recovering from a severe asthma attack, Defendants continued to harass Charles about completing shipping labels, even though this task was something that a number of other employees could easily have accomplished.

41.    On July 3, 2020, at 10:27 p.m., Charles sent Bell an email memorializing Defendants' interference with Charles' sick leave, stating that her doctor had recommended that she take FMLA leave, and requesting that she be provided with the proper FMLA forms in order to submit a request for FMLA leave due to her serious health condition. (Exhibit "5").

42.    On Monday, July 6, 2020, Dominique Jackson ("Jackson"), Human Resources Coordinator, provided Charles with the necessary paperwork to request FMLA leave.

43.    The same day, Bell asked Charles to respond to work-related questions.

44. Afraid of losing her job if she refused, Charles attempted to access her work email in order to respond.

45. However, when Charles attempted to access her work email, she was unable to do so, as her account had been suspended.

46. Charles then discussed with Jackson that she was unable to access her work email.

47. Jackson admitted that employees' email accounts were not ordinarily suspended, due to them going out on a FMLA leave.

48. On July 13, 2020, Charles provided Defendants with completed FMLA paperwork, in which Oji Omobola, M.D. ("Dr. Omobola"), of Providence Medical Center, Woodbridge, New Jersey, put Charles out on FMLA leave until July 28, 2020. (Exhibit "6").

49. Shortly thereafter, Dr. Omobola's offices closed due to COVID-19.

50. On July 21, 2020, Charles consulted with Alexander Christou, D.O. ("Dr. Christou"), who prescribed a new medication and also extended Charles' leave to September, 2020.

51. The same day, Charles emailed her updated FMLA paperwork for this extended leave to Jackson.

52. The new medication worked very well and Charles' condition improved greatly after taking the medication for one week.

53. Thus, on Friday, July 31, 2020, Dr. Christou cleared Charles to return to work as of Monday August 3, 2020. (Exhibit "7").

54. The same day, Charles provided Jackson with a copy of her doctor's note clearing her to return to work as of Monday, August 3, 2020. (Exhibit "7").

55. Later that same day, at 8:47 p.m., Charles received a text message from Bell stating that she had received Charles' clearance to return to work and further advising that Charles was to meet Bell at the office, that Monday, August 3, 2020, at 9:30 a.m.

56. Charles arrived at work early, at about 8:50 a.m., on Monday, August 3, 2020 and commenced working.

57. Soon afterwards, Bell yelled from across the room for Charles to come into her office.

58. When Charles entered Bell's office, Bell introduced Charles to Grace (last name unknown), as the new Human Resources Manager. Bell then informed Charles that she had numerous write ups generated about Charles.

59.  Even though Bell did not give Charles any documents, Bell went through a litany of issues about Charles' performance, then told Charles she was terminated, and then had Grace escort Charles out of the building.

60.  Charles was shocked by the blatantly discriminatory and retaliatory termination.

61.  Charles had never been given any written warnings of any performance issues, before she was terminated.

62.  Charles had never been disciplined, before she was terminated.

63.  Charles had never been suspended, before she was terminated.

64.  Charles had never been demoted, before she was terminated.

65.  Charles had never been threatened with termination, before she was terminated.

66.  Defendants' purported reason for termination was clearly a pretext for disability discrimination and retaliation for taking a medical leave and seeking reasonable accommodations.

67.  Defendants had an obligation under the LAD to engage in an interactive discussion with Charles about what reasonable accommodations could be made due to Charles' medical condition.

68.  Defendants further failed to engage in an interactive discussion with Charles.

69.  Defendants' termination of Charles sent her into an emotional tailspin.

70.  Defendants' illegal actions resulted in Charles suffering significant emotional trauma, physical injury, and/or the physical manifestation of emotional distress damages.

71.  Due to Defendants' unlawful discrimination and retaliation, Charles has suffered from insomnia and extreme anxiety, which has exacerbated her asthma condition.

72.  Due to the sudden loss of income, Charles and her mother, whom she helps to support, were forced to move to another state to live with relatives.

73.  After Charles' termination, some and/or all of her job functions survived and were performed by other non-disabled employees.

74.  At the time of her termination on August 3, 2020, Charles was making a salary of $15.50 per hour, or approximately $32,240 per year.  Further, Plaintiff was eligible for vision, dental and medical benefits, 401K, 10 days paid vacation, 12 paid personal days and approximately 10 company paid holidays per year.

**Count I**
**(New Jersey Law Against Discrimination)**
**(Disability/Handicap Discrimination)**

75.     Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

76.     The foregoing facts and circumstances demonstrate that Defendants have violated the LAD, N.J.S.A. 10:5-1 *et seq.,* by discriminating against Plaintiff due to Plaintiff's handicap and/or disability.

77.     As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

78.     Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count II**
**(New Jersey Law Against Discrimination)**
**(Failure to Engage in the Interactive Process)**

79.     Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

80.     The foregoing facts and circumstances demonstrate that Defendants have violated the LAD, N.J.S.A. 10:5-1 *et seq.,* by failing to engage in the interactive process to accommodate Plaintiff due to her disability/handicap.

81.     As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have

to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

82. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count III**
**(New Jersey Law Against Discrimination)**
**(Failure to Accommodate)**

83. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

84. The foregoing facts and circumstances demonstrate that Defendants have violated the LAD, N.J.S.A. 10:5-1 *et seq.,* by failing to reasonably accommodate Plaintiff's disability.

85. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

86. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**Count IV**
**(New Jersey Law Against Discrimination)**
**(Retaliation)**

87. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

88. The foregoing facts and circumstances demonstrate that Defendants have violated the LAD N.J.S.A. 10:5-1 *et seq.,* by retaliating against Plaintiff for suffering from a disability, engaging in the protected activity of taking disability leave and/or medical leave, requesting

reasonable accommodations due to a medical/disability leave status, and/or for complaining about Defendants' discrimination and/or failure to accommodate.

89.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

90.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### Count V
### New Jersey Earned Sick Leave Law, N.J.S.A. 34:11D-1 *et seq.*
### (Interference)

91.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

92.    The foregoing facts and circumstances demonstrate that Defendants have violated the NJESLL and interfered with Plaintiff's rights under the NJESSL by requiring Plaintiff to come into work while sick, to perform work while out on an approved sick day and/or, and failing to pay Plaintiff for her accumulated and unused sick time.

93.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

94.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count VI
### New Jersey Earned Sick Leave Law, N.J.S.A. 34:11D-1 *et seq.*
### (Retaliation)

95.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

96.   The foregoing facts and circumstances demonstrate that Defendants have violated the NJESLL, by retaliating against Plaintiff for engaging in protected activity under the NJESLL.

97.   Defendants terminated Plaintiff for taking sick leave under the NJSLL in violation of the NJESLL.

98.   As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

99.   Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count VII
### (Family and Medical Leave Act, 29 U.S.C. § 2651(b) *et seq.*)
### (Interference)

100.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

101.   The foregoing facts and circumstances demonstrate that Defendants have violated the Family Medical Leave Act, 29 U.S.C. § 2651(b) *et seq.* (the "FMLA").

102.   Defendants are subject to the FMLA.

103.   Defendant Spring Hills Senior Communities, LLC has in excess of 50 employees.

104.   During the relevant time period, Plaintiff had in excess of 1,250 hours of employment for Defendant.

105.   Defendants intentionally terminated Plaintiff in a manner that Defendants believed would deprive Plaintiff the protections of the FMLA and/or interfere with Plaintiff going out on FMLA leave.

106.   Defendants knew that Plaintiff took FMLA and/or disability leave from on or about July 2, 2020 to August 3, 2020.

107.   Plaintiff returned to work on August 3, 2020, albeit still suffering from the disability that rendered her going out on FMLA leave.

108.   This return to work date resulted in plaintiff using less than twelve (12) weeks in the calendar year on medical leave.

109.   Defendants terminated Plaintiff while she still suffered from her medical condition that had resulted in Plaintiff having to take FMLA leave.

110.   Defendants terminated Plaintiff to interfere with her ability to take future FMLA leaves of absence.

111.   As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

112.   Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count VIII
**(Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*)**
**(Retaliation)**

113.   Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

114.   Defendants terminated Plaintiff in retaliation for Plaintiff having taken a FMLA leave.

115.   As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional

distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

116. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against the Defendants jointly and severally, as follows:

A.  Compensatory damages of not less than $650,000;

B.  Damages for lost wages and benefits, back pay, front pay (or reinstatement);

C.  Damages for humiliation, mental and emotional distress;

D.  Statutory damages, if applicable;

E.  Punitive damages and or liquidated damages where permitted by law;

F.  Attorneys' fees and costs of suit;

G.  Lawful interest - including pre-judgment interest on lost wages;

H.  Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and

I.  Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4, TY HYDERALLY is hereby designated as trial counsel on behalf of plaintiff.

## R. 4:5-1(b)(2) CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:        May 6, 2021

HYDERALLY & ASSOCIATES, P.C.
*Attorneys for Plaintiff*


By: _____
TY HYDERALLY, ESQ.
For the Firm

T:\Charles Ashley\Pleadings\050621.COM.doc

# EXHIBIT "1"



Thu, Jun 18, 2:00 PM

Hi Ashley. Just checking if you got this weeks order out.

Ok great.  Thanks I didn't see a response.

Wed, Jul 1, 12:43 PM

Ok I hope you feel better.   How easy is it to change to another person?

Wed, Jul 1, 6:09 PM

Hi I hope you are ok.
 I didn't hear back. Do we need to change the phones for tomorrow?

Let me know if you hear back

Thu, Jul 2, 9:02 AM

Hi Ashley just checking if you'll be working today before I try to get the phones changed.

   

      

# EXHIBIT "2"



Thu, Jul 2, 9:02 AM

Hi Ashley just checking if you'll be working today before I try to get the phones changed.

I would like to have the phone changed forward. Today is worse than last night, though I don't think well with my cold cold

Ok. Sorry to hear that.  I'll see what I can do.  If you hear from them please  make the change to not forward anywhere at the moment.

Okay, got it

I didn't clock in because I'm not working. Should I say a sick day?

Yes put it in the system.  Angie is going to try to get the phones changed.

If you don't answer your phone will it go to your work voicemail?

Nevermind I found out. It goes to your personal voicemail

It will go to the work voicemail, that's what I was told. I've never not answered, I'm not sure.

I just called.  Personal voicemail

ok, so I'll be mindful of messages until she's successful with the change. I'll also call René and send angie his number

René 

René's his number as well

Also, I believe if the right is turned off at the office it'll ring in the office and not to my phone.

Thu, Jul 2, 2:20 PM

  Text Message 

  Pay   

EXHIBIT "3"





Thu, Jul 2, 2:20 PM

Hi Ashley Jessica is asking if supplies went out  2:20 PM

2:20 PM

2:21 PM

Oh no.  2:21 PM

2:21 PM

Did you tell anyone?  2:21 PM

Friday?  2:22 PM

2:22 PM

Sorry confused.  What do you mean?  2:22 PM

2:23 PM

2:23 PM

But what do you mean he will be there tomorrow?  2:23 PM

2:25 PM

Ok she just emailed asking so you have already been
in touch with her?  2:25 PM

2:26 PM



Thank you

Today 2:18 PM

Hi Ashley,
I just remember about the list did it go

    Text Message 

   

# EXHIBIT "4"

8/4/2020                                    Gmail - Fwd: AL Supply Shipping List

From: Heather Tussing <HTussing@spring-hills.net<mailto:HTussing@spring-hills.net>>
Sent: Thursday, July 2, 2020 2:38 PM
To: Ashley Charles <ACharles@spring-hills.net<mailto:ACharles@spring-hills.net>>
Cc: Jessica Roman <JRoman1@spring-hills.net<mailto:JRoman1@spring-hills.net>>; Elena Ortiz <eortiz@spring-hills.net<mailto:eortiz@spring-hills.net>>; Unanda Bell <ubell@spring-hills.net<mailto:ubell@spring-hills.net>>; Mark Tussing <MTussing@spring-hills.net<mailto:MTussing@spring-hills.net>>
Subject: Re: AL Supply Shipping List

Great, I just resent
Sincerely,
Heather


Heather Tussing, CALA, TALA, CADDCT, CDP
Vice President of Assisted Living Operations
Spring Hills Senior Communities
515 Plainfield Avenue
Suite 200
Edison, NJ 08817
740-572-2755 (cell)
htussing@spring-hills.net<mailto:htussing@spring-hills.net>
www.spring-hills.com<http://www.spring-hills.com>




On Jul 2, 2020, at 2:36 PM, Ashley Charles <ACharles@spring-hills.net<mailto:ACharles@spring-hills.net>> wrote:
 Hello Heather,

Thankfully, Bryan says he is at the currently in Edison and can complete the list today. May you resend this list to me? I can not locate it in my email to forward to him.
Sincerely,

Ashley Charles
Receptionist
Spring Hills Senior Communities<http://www.spring-hills.com/>
P: 732.582.0400<tel:732.582.0400> F: 732.582.0268<tel:732.582.0268>
515 Plainfield Ave.<x-apple-data-detectors://2/1>
Suite 200<x-apple-data-detectors://2/1>
Edison, NJ 08817<x-apple-data-detectors://2/1>

[fb-icon]<https://www.facebook.com/SpringHillsSeniorCommunities>  [linked-in-icon] <https://www.linkedin.com/company/spring-hills-senior-communities>  [twitter-icon] <https://twitter.com/springhills>  [youtube-icon] <https://www.youtube.com/user/SpringHillsVideos>

[cid:image018.png@01D04B6B.7DD5C590]<http://www.jobs.net/jobs/spring-hills-senior-living/join?joinpath=Extportablejoin>




On Jul 2, 2020, at 2:28 PM, Heather Tussing <HTussing@spring-hills.net<mailto:HTussing@spring-hills.net>> wrote:
 Thank you, Ashley.
Sincerely,
Heather

Heather Tussing, CALA, TALA, CADDCT, CDP
Vice President of Assisted Living Operations

8/4/2020                              Gmail - Fwd: AL Supply Shipping List

Spring Hills Senior Communities
515 Plainfield Avenue
Suite 200
Edison, NJ 08817
740-572-2755 (cell)
htussing@spring-hills.net<mailto:htussing@spring-hills.net>
www.spring-hills.com<http://www.spring-hills.com>

On Jul 2, 2020, at 2:27 PM, Ashley Charles <ACharles@spring-hills.net<mailto:ACharles@spring-hills.net>> wrote:
 Ok, I'll reach out to bryan now.
Sincerely,

Ashley Charles
Receptionist
Spring Hills Senior Communities<http://www.spring-hills.com/>
P: 732.582.0400<tel:732.582.0400> F: 732.582.0268<tel:732.582.0268>
515 Plainfield Ave.<x-apple-data-detectors://2/1>
Suite 200<x-apple-data-detectors://2/1>
Edison, NJ 08817<x-apple-data-detectors://2/1>

[fb-icon]<https://www.facebook.com/SpringHillsSeniorCommunities>  [linked-in-icon] <https://www.linkedin.com/
company/spring-hills-senior-communities>   [twitter-icon] <https://twitter.com/springhills>   [youtube-icon]
<https://www.youtube.com/user/SpringHillsVideos>

[cid:image018.png@01D04B6B.7DD5C590]<http://www.jobs.net/jobs/spring-hills-senior-living/join?joinpath=
Extportablejoin>

On Jul 2, 2020, at 2:26 PM, Heather Tussing <HTussing@spring-hills.net<mailto:HTussing@spring-hills.net>> wrote:
 Ashely, I'm sorry you aren't feeling well. We need the packages to go out today as receipt will be delayed due to the
holiday.
Sincerely,
Heather

Heather Tussing, CALA, TALA, CADDCT,
CDP
Vice President of Assisted Living Operations
Spring Hills Senior Communities
515 Plainfield Avenue
Suite 200
Edison, NJ 08817
740-572-2755 (cell)
htussing@spring-hills.net<mailto:htussing@spring-hills.net>
www.spring-hills.com<http://www.spring-hills.com>

On Jul 2, 2020, at 2:25 PM, Ashley Charles <ACharles@spring-hills.net<mailto:ACharles@spring-hills.net>> wrote:
 Hello Jessica,

No, I didn't get a chance to send the list out, as i'm not feeling well from my asthma. I didn't get a chance to inform
everyone because I thought I'd be able to go to the office. I am currently home on medication. Sorry for the major
inconvenience, I'll ask bryan if he's available tomorrow to complete it.

Sincerely,

Ashley Charles

8/4/2020                                    Gmail - Fwd: AL Supply Shipping List

Receptionist
Spring Hills Senior Communities<http://www.spring-hills.com/>
P: 732.582.0400<tel:732.582.0400> F: 732.582.0268<tel:732.582.0268>
515 Plainfield Ave.<x-apple-data-detectors://2/1>
Suite 200<x-apple-data-detectors://2/1>
Edison, NJ 08817<x-apple-data-detectors://2/1>

[fb-icon]<https://www.facebook.com/SpringHillsSeniorCommunities>  [linked-in-icon] <https://www.linkedin.com/
company/spring-hills-senior-communities>  [twitter-icon] <https://twitter.com/springhills>  [youtube-icon]
<https://www.youtube.com/user/SpringHillsVideos>

[cid:image018.png@01D04B6B.7DD5C590]<http://www.jobs.net/jobs/spring-hills-senior-living/join?joinpath=
Extportablejoin>


On Jul 2, 2020, at 2:16 PM, Jessica Roman <JRoman1@spring-hills.net<mailto:JRoman1@spring-hills.net>> wrote:

Hi Ashley,

Did list went out ?

From: Heather Tussing <HTussing@spring-hills.net<mailto:HTussing@spring-hills.net>>
Sent: Tuesday, June 30, 2020 8:20 PM
To: Jessica Roman <JRoman1@spring-hills.net<mailto:JRoman1@spring-hills.net>>; Ashley Charles <ACharles@spring-
hills.net<mailto:ACharles@spring-hills.net>>
Cc: Elena Ortiz <eortiz@spring-hills.net<mailto:eortiz@spring-hills.net>>; Unanda Bell <ubell@spring-hills.net<
mailto:ubell@spring-hills.net>>; Mark Tussing <MTussing@spring-hills.net<mailto:MTussing@spring-hills.net>>
Subject: AL Supply Shipping List
Importance: High

Good Evening – Attached is the supply shipping list. Please confirm once shipped.

Sincerely,
Heather


Heather Tussing, CALA, TALA, CADDCT, CDP
Vice President of Assisted Living Operations
Spring Hills Senior Communities
515 Plainfield Avenue
Suite 200
Edison, NJ 08817
740-572-2755 (cell)
732-412-4336 (e-fax)
htussing@spring-hills.net<mailto:htussing@spring-hills.net>

<image001.png><https://www.facebook.com/SpringHillsSeniorCommunities>

<image002.png><https://www.linkedin.com/company/spring-hills-senior-communities>
  <https://twitter.com/springhills>
<image003.png><https://twitter.com/springhills>
  <https://www.youtube.com/user/SpringHillsVideos>
<image004.png><https://www.youtube.com/user/SpringHillsVideos>


<image005.png><http://www.jobs.net/jobs/spring-hills-senior-living/join?joinpath=Extportablejoin>

# EXHIBIT "5"

8:02 PM   Mon Aug 3                                                 .ıll LTE ⊕ ⩘ 41% ▬

<                                                        ⤓  🗑  ✉  •••

## Fw: leave of absence request   Inbox                                          ☆

 **Ashley Charles**  Jul 3                                    ↩  •••
to Domonique, me ⌄

Sincerely,

Ashley Charles
Receptionist
Spring Hills Senior Communities<http://www.spring-hills.com/>
P: 732.582.0400 F: 732.582.0268
515 Plainfield Ave.
Suite 200
Edison, NJ 08817

―――――――――――――
From: Ashley Charles
Sent: Friday, July 3, 2020 10:27 PM
To: Unanda Bell
Subject: leave of absence request

Good Evening Unanda,

I just got a chance to reach out to you - I've been sick all day. Yesterday, I requested to you that I take a sick day because of my asthma flare-up on Wednesday and I expressed to you that I wasn't feeling well. I didn't even have a voice to answer the phones properly, so you switched the phones off from me.

Even after being approved of a sick day, I was still contacted by upper management. Unfortunately, I do not have access to Kodiak at home. Therefore, I feel someone else could have been contacted to complete this task. I am home recovering from an asthma attack which is not easy.

Due to my recent attacks and my frequent visits to the office, my doctor insisted I think about applying for a leave of absence. If I'm eligible for this, may I have the proper documentation to complete this process?

Thank you Unanda, I'll talk to you soon.

Sincerely,

Ashley Charles
Receptionist
Spring Hills Senior Communities<http://www.spring-hills.com/>
P: 732.582.0400 F: 732.582.0268
515 Plainfield Ave.
Suite 200
Edison, NJ 08817


Mail


Meet

# EXHIBIT "6"

**Certification of Health Care Provider for
Employee's Serious Health Condition
(Family and Medical Leave Act)**

**U.S. Department of Labor**

Wage and Hour Division

**WHD**
U.S. Wage and Hour Division

OMB Control Number: 1235-0003
Expires: 8/31/2021

DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT

**SECTION I: For Completion by the EMPLOYER**
**INSTRUCTIONS to the EMPLOYER:** The Family and Medical Leave Act (FMLA) provides that an employer may
require an employee seeking FMLA protections because of a need for leave due to a serious health condition to submit a
medical certification issued by the employee's health care provider. Please complete Section I before giving this form to
your employee. Your response is voluntary. While you are not required to use this form, you may not ask the employee to
provide more information than allowed under the FMLA regulations, 29 C.F.R. §§ 825.306-825.308. Employers must
generally maintain records and documents relating to medical certifications, recertifications, or medical histories of
employees created for FMLA purposes as confidential medical records in separate files/records from the usual personnel
files and in accordance with 29 C.F.R. § 1630.14(c)(1), if the Americans with Disabilities Act applies, and in accordance
with 29 C.F.R. § 1635.9, if the Genetic Information Nondiscrimination Act applies.

Employer name and contact: _____

Employee's job title: _____   Regular work schedule: _____

Employee's essential job functions: _____

_____

Check if job description is attached: _____

**SECTION II: For Completion by the EMPLOYEE**
**INSTRUCTIONS to the EMPLOYEE:** Please complete Section II before giving this form to your medical provider.
The FMLA permits an employer to require that you submit a timely, complete, and sufficient medical certification to
support a request for FMLA leave due to your own serious health condition. If requested by your employer, your response
is required to obtain or retain the benefit of FMLA protections. 29 U.S.C. §§ 2613, 2614(c)(3). Failure to provide a
complete and sufficient medical certification may result in a denial of your FMLA request. 29 C.F.R. § 825.313. Your
employer must give you at least 15 calendar days to return this form. 29 C.F.R. § 825.305(b).

Your name: _Ashley_ _____ _____ _Charles_ _____
First                          Middle                        Last

**SECTION III: For Completion by the HEALTH CARE PROVIDER**
**INSTRUCTIONS to the HEALTH CARE PROVIDER:** Your patient has requested leave under the FMLA. Answer,
fully and completely, all applicable parts. Several questions seek a response as to the frequency or duration of a
condition, treatment, etc. Your answer should be your best estimate based upon your medical knowledge, experience, and
examination of the patient. Be as specific as you can; terms such as "lifetime," "unknown," or "indeterminate" may not
be sufficient to determine FMLA coverage. Limit your responses to the condition for which the employee is seeking
leave. Do not provide information about genetic tests, as defined in 29 C.F.R. § 1635.3(f), genetic services, as defined in
29 C.F.R. § 1635.3(e), or the manifestation of disease or disorder in the employee's family members, 29 C.F.R. §
1635.3(b). Please be sure to sign the form on the last page.

Provider's name and business address: _Dr Omobola OJ_____

Type of practice / Medical specialty: _Providence Med Care_____

Telephone: _(732) 442 2301_____   Fax: _(732) 442 2305_____

Page 1

Form WH-380-E  Revised May 2015

**PART B: AMOUNT OF LEAVE NEEDED**

5. Will the employee be incapacitated for a single continuous period of time due to his/her medical condition, including any time for treatment and recovery? __✓__No ___Yes.

   If so, estimate the beginning and ending dates for the period of incapacity: _____

6. Will the employee need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of the employee's medical condition? ___No ___Yes.

   If so, are the treatments or the reduced number of hours of work medically necessary? ___No __✓__Yes.

   Estimate treatment schedule, if any, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period:

   _____

   Estimate the part-time or reduced work schedule the employee needs, if any:

   _24_ hour(s) per day; _3-5_ days per week from ___7/13___ through ___7/28___

7. Will the condition cause episodic flare-ups periodically preventing the employee from performing his/her job functions? ___No __✓__Yes.

   Is it medically necessary for the employee to be absent from work during the flare-ups? ___ No _✓_ Yes. If so, explain:

   _____

   _____

   Based upon the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., 1 episode every 3 months lasting 1-2 days):

   Frequency      : _1_ times per _____ week(s) _3_ month(s)

   Duration: _____ hours or _3-5_ day(s) per episode

ADDITIONAL INFORMATION:  IDENTIFY QUESTION NUMBER WITH YOUR ADDITIONAL ANSWER:

_____

_____

_____

_____

_____

_Ashley Charles_

**PART A: MEDICAL FACTS**

1. Approximate date condition commenced: _____

    Probable duration of condition: _____

    **Mark below as applicable:**
    Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?
    ___No ___Yes.  If so, dates of admission:
    _____

    Date(s) you treated the patient for condition:
    _7/6/2020 , 7/13/2020_____

    Will the patient need to have treatment visits at least twice per year due to the condition?  ___No _✓_Yes.

    Was medication, other than over-the-counter medication, prescribed? ___No _✓_Yes.

    Was the patient referred to other health care provider(s) for evaluation or treatment (e.g., physical therapist)?
    ___No ___Yes.  If so, state the nature of such treatments and expected duration of treatment:
    _____

2. Is the medical condition pregnancy? _✓_No ___Yes.  If so, expected delivery date: _____

3. Use the information provided by the employer in Section I to answer this question.  If the employer fails to
   provide a list of the employee's essential functions or a job description, answer these questions based upon
   the employee's own description of his/her job functions.

    Is the employee unable to perform any of his/her job functions due to the condition: ___No _✓_Yes.

    If so, identify the job functions the employee is unable to perform:
    _____

4. Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave
   (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use
   of specialized equipment):
    _— Shortness of breath_____
    _— wheezing_____
    _____
    _____
    _____
    _____
    _____

Page 2                          CONTINUED ON NEXT PAGE              Form WH-380-E  Revised May 2015

_____     Date ___7/13/2020___
**Signature of Health Care Provider**

**PAPERWORK REDUCTION ACT NOTICE AND PUBLIC BURDEN STATEMENT**
If submitted, it is mandatory for employers to retain a copy of this disclosure in their records for three years. 29 U.S.C. § 2616; 29 C.F.R. § 825.500. Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.  The Department of Labor estimates that it will take an average of 20 minutes for respondents to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, U.S. Department of Labor, Room S-3502, 200 Constitution Ave., NW, Washington, DC 20210.  **DO NOT SEND COMPLETED FORM TO THE DEPARTMENT OF LABOR; RETURN TO THE PATIENT.**

Page 4                                                                    Form WH-380-E  Revised May 2015

# EXHIBIT "7"



ALEXANDER CHRISTOU DO | 95 MADISON AVENUE SECOND FLOOR, SUITE A | MORRISTOWN, NJ 07960-6092
p: (973) 267-1010 f: (973) 267-5521 | summitmedicalgroup.com

Date: 07/31/2020

To whom it may concern:

Ashey Charles is under my care. She is medically cleared to return to work on August 3, 2020. Please do not hesitate to contact me if you have any questions.

Sincerely,

Electronically Signed by: ALEXANDER CHRISTOU DO

# Civil Case Information Statement

**Case Details: MIDDLESEX | Civil Part Docket# L-002711-21**

**Case Caption:** CHARLES ASHLEY  VS SPRING HILLS
SENIOR  COMMUNIT

**Case Initiation Date:** 05/06/2021

**Attorney Name:** TY HYDERALLY

**Firm Name:** HYDERALLY & ASSOCIATES, P.C.

**Address:** 33 PLYMOUTH ST STE 202

MONTCLAIR NJ 07042

**Phone:** 9735098500

**Name of Party:** PLAINTIFF : Charles, Ashley

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** LAW AGAINST DISCRIMINATION (LAD) CASES

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Ashley Charles? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Employer/Employee

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
      **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
      **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

05/06/2021                                                                                    /s/ TY HYDERALLY
Dated                                                                                             Signed

# EXHIBIT B

Ty Hyderally, Esq. (Atty. ID No.: 023231993)
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
Attorneys for Plaintiff: Ashley Charles

|  |  |
|---|---|
| **ASHLEY CHARLES,**<br><br>**PLAINTIFF,**<br><br>**VS.**<br><br>**SPRING HILLS SENIOR COMMUNITIES, LLC, UNANDA BELL, JOHN DOES 1-10, AND XYZ CORP. 1-10,**<br><br>**DEFENDANTS.** | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX<br>DOCKET NO.: MID-L-2711-21<br><br>CIVIL ACTION<br><br>**ACKNOWLEDGMENT OF SERVICE** |

In accordance with Rule 4:4-6, Counsel for defendants, Spring Hills Communities, LLC. Unanda Bell, accepts service as if the defendants in the above-referenced action have been properly served. Further, said defendants acknowledge receipt of the filed Complaint and Jury Demand, Case Information Statement, Track Assignment Notice, Summons and this Acknowledgment of Service in the above-captioned action.

Attorneys for Defendants, Spring Hills
Communities, LLC. & Unanda Bell
Luke P. Breslin, Esq.
Jackson Lewis, P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
908-795-5200
Luke.Breslin@jacksonlewis.com2

Dated: 5·12·21
T:\Charles Ashley\Pleadings\050621.AOS.Breslin Esq.doc